T.C. Memo. 2017-88

UNITED STATES TAX COURT

CHRISTINA M. FITZPATRICK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9433-13L.                          Filed May 24, 2017.

Keith Howard Johnson, Adam L. Heiden, and Michael P. Tyson, for petitioner.

Anne M. Craig, Lauren B. Epstein, and Peter T. McCary, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge: This case is before the Court on petitioner's motion for an award of administrative and litigation costs pursuant to section 7430 and Rule

[*2] 231.[1]  The parties agree that a hearing on the motion is not required.

Accordingly, we rule on petitioner's motion on the basis of the parties'

submissions and the existing record.  See Rule 232(a).  The portions of our

opinion on the merits in the instant case, Fitzpatrick v. Commissioner, T.C. Memo.

2016-199, that are relevant to our disposition of this motion are incorporated by

this reference.

The issues we must decide are:  (1) whether petitioner is entitled to recover

administrative and litigation costs, and, if so, (2) whether the amount of costs

claimed is reasonable.

Background

Petitioner was the subject of a trust fund recovery penalty (TFRP)

investigation arising from unpaid employment taxes.  Petitioner was interviewed

by a revenue officer who subsequently issued a Letter 1153 proposing assessment

of the TFRPs against her.  Petitioner, however, never received the Letter 1153.

Respondent subsequently assessed the liability and began collection actions.

Petitioner requested a collection due process (CDP) hearing where she was

allowed to challenge her underlying liability (i.e., challenge whether she was liable

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** for the TFRPs) because she had not had a prior opportunity to dispute the liability with the IRS Office of Appeals (Appeals). During the CDP hearing (specifically, on November 7, 2012) petitioner submitted a section 7430 "qualified offer". The settlement officer neither accepted nor rejected the qualified offer, and he instead allowed it to lapse.

The settlement officer issued a notice of determination stating that petitioner was liable for the TFRPs. After petitioner filed a petition seeking review of the determination, we reviewed the case de novo and held that petitioner was not liable for the TFRPs. Petitioner subsequently moved for an award of administrative and litigation costs.

## Discussion

### I. Whether Petitioner Is Entitled to an Award of Administrative and Litigation Costs

Section 7430(a) permits the award of reasonable administrative and litigation costs to a taxpayer in an administrative or court proceeding brought against the United States in connection with the determination of any tax, interest, or penalty under the Code. An award of reasonable administrative or litigation costs may be made where: (1) the taxpayer is the prevailing party, (2) the taxpayer did not unreasonably protract the proceedings, (3) the amount of the costs

**[*4]** requested is reasonable; and (4) the taxpayer exhausted the administrative remedies available to her. Sec. 7430(b) and (c). Respondent concedes that all requirements are met except for the prevailing party requirement.

To qualify as a prevailing party a taxpayer must establish that she (1) substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented and (2) meets the applicable net worth requirement. Sec. 7430(c)(4)(A). However, even if the taxpayer meets these requirements, she will not be treated as a prevailing party if the Commissioner establishes that his position in the proceeding was "substantially justified". See sec. 7430(c)(4)(B)(i).

Even if the Commissioner can establish that his position was substantially justified, a taxpayer can still be considered a prevailing party if she makes a qualified offer and "the liability of the taxpayer pursuant to the judgment in the proceeding * * * is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted * * * [the] qualified offer". Sec. 7430(c)(4)(E)(i). This rule applies regardless of whether the Commissioner's position in the proceeding is substantially justified. Id.; Haas & Assocs. Accountancy Corp. v. Commissioner, 117 T.C. 48, 59, aff'd, 55 F. App'x 476 (9th Cir. 2003). Costs recoverable under the qualified offer rule "only include

**[*5]** those costs incurred on or after the date of the last qualified offer".  Sec. 301.7430-7(a), Proced. & Admin. Regs.  For all other claimed costs, the Commissioner may assert his substantial justification defense pursuant to the general prevailing party rule of section 7430(c)(4).

Respondent agrees that petitioner meets the net worth requirements and substantially prevailed with respect to the amount in controversy and the most significant issue presented.  Respondent also agrees that petitioner submitted a qualified offer on November 7, 2012, and that her liability pursuant to our opinion was less than the amount of the qualified offer.  Consequently, respondent concedes that petitioner was a prevailing party pursuant to section 7430(c)(4)(E)(i) for costs incurred on and after November 7, 2012, the date that petitioner submitted her qualified offer.  Respondent maintains, however, that his position was substantially justified and that petitioner should therefore not recover administrative costs incurred before November 7, 2012.

In general, the Commissioner's position is substantially justified if, on the basis of all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably.  See Pierce v. Underwood, 487 U.S. 552, 565 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), aff'd, 861 F.2d 131 (5th Cir. 1988).  The Commissioner's position may be substantially justified

**[*6]** even if incorrect "if a reasonable person could think it correct". Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 443 (1997) (quoting Underwood, 487 U.S. at 566 n.2). The Commissioner's eventually conceding or losing a case does not establish that his position was not reasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989).

In evaluating the Commissioner's justification, we must first identify when the Commissioner took a position and then decide whether the position taken from that point was substantially justified. The Commissioner's position in an administrative proceeding is determined on the earlier of: (1) the date of receipt by the taxpayer of the decision of Appeals or (2) the date of the notice of deficiency. See sec. 7430(c)(7)(B). Respondent's position was therefore established when the settlement officer issued the notice of determination determining that petitioner was a responsible person who willfully failed to pay over taxes.

Respondent argues that the settlement officer's determination was substantially justified because the administrative record shows that petitioner: (1) invested money in the business, (2) opened the business' bank account as secretary for the corporation, (3) maintained signatory authority over the bank account, (4) signed checks for the corporation, (5) monitored the corporation's

**[*7]** bank account, (6) contracted with Paychex to provide payroll services, and (7) directed and/or authorized spending by the general manager. We have reviewed the administrative record and agree with respondent that a reasonable person could conclude that many of the above items were true. We also agree that under those circumstances a reasonable person could conclude that petitioner was liable for the TFRPs.[2] Accordingly, we hold respondent's position was substantially justified for the period up until the qualified offer was made.

We note, however, that our ruling on substantial justification is based only on the information in the administrative record--i.e., the information available to the settlement officer when he made his determination. The Court, by contrast, had the benefit of a seven-day trial where numerous witnesses were under oath and subject to cross-examination. It was under these circumstances that we were able to determine that petitioner was not liable for the TFRPs.[3]

---

[2] In order for a taxpayer to be held liable for TFRPs, she must (1) be a responsible person who (2) willfully failed to pay over the trust fund taxes at issue. Sec. 6672. Indicia of responsibility include "the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees." Thibodeau v. United States, 828 F.2d 1499, 1503 (11th Cir. 1987).

[3] In Fitzpatrick v. Commissioner, T.C. Memo. 2016-199, we found that much of the information in the administrative record was either misleading or false. The administrative record comprised the revenue officer's investigatory

(continued...)

**[*8]** II.      Whether Petitioner's Claimed Costs Are Reasonable in Amount

Now that we have determined that petitioner is entitled to recover costs incurred from the date the qualified offer was submitted, we must next determine whether the claimed costs are reasonable in amount.

An award of attorney's fees under section 7430 is generally limited to a statutory rate[4] "unless the court determines that * * * a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise justifies a higher rate." Sec. 7430(c)(1)(B)(iii).

Petitioner argues that she should be entitled to recover costs in excess of the statutory cap because of various special factors, including Mr. Johnson's tax

———————————

[3](...continued)
notes along with prior submissions from James Stamps (the president of the corporation) and Kris Chislett (the business' general manager). While petitioner submitted a narrative and affidavits to the settlement officer supporting her position, the misinformation provided by Mr. Chislett, Mr. Stamps, and the revenue officer was enough for a reasonable person to conclude that petitioner was liable for the TFRPs.

[4] An award for fees incurred in 2012 is limited to $180 per hour. Rev. Proc. 2011-52, sec. 3.39, 2011-45 I.R.B. 701, 708. An award for fees incurred in 2013 and 2014 is limited to $190 per hour. Rev. Proc. 2012-41, sec. 3.27, 2012-45 I.R.B. 539, 542; Rev. Proc. 2013-35, sec. 3.42, 2013-47 I.R.B. 537, 544. An award for fees incurred in 2015, 2016, and 2017 is limited to $200 per hour. Rev. Proc. 2014-61, sec. 3.43, 2014-47 I.R.B. 860, 868; Rev. Proc. 2015-53, sec. 3.50, 2015-44 I.R.B. 615, 627; Rev. Proc. 2016-55, sec. 3.54, 2016-45 I.R.B. 707, 717.

**[*9]** controversy expertise, the limited number of tax controversy attorneys in the Jacksonville area, the difficulty of the case, and respondent's unreasonable litigating position. Respondent counters that petitioner should be limited to the statutory cap because she has not established that a special factor exists to award an enhanced rate. We will review each of the special factors petitioner claims for fee enhancement.

A. Limited Availability of Qualified Attorneys

Petitioner first argues that there were a limited number of qualified attorneys available to represent her. In order to recover under this special factor, the taxpayer must show that the number of competent attorneys in the area was so limited that taxpayers with valid claims were otherwise unable to secure representation. See Powers v. Commissioner, 43 F.3d 172, 183-184 (5th Cir. 1995). Petitioner submitted an affidavit from another Jacksonville tax controversy attorney, David Ferebee, who avers that apart from petitioner's attorneys, there were around four other attorneys who could have represented petitioner. We recognize that two of those attorneys represented Mr. Chislett and Mr. Stamps and would have therefore been ineligible to represent petitioner. However, the fact that two attorneys remained indicates that there were sufficient attorneys in the area who were available to represent petitioner. Furthermore, notwithstanding

**[\*10]** Mr. Ferebee's assertions, we take judicial notice of the fact that numerous other attorneys were listed as counsel to various taxpayers at the same December 2015 trial session where this case was first tried. This fact indicates that there are likely more tax controversy attorneys in the area than the several identified by Mr. Ferebee. Consequently, we find that this factor does not support a departure from the statutory rate.

      B.    <u>Tax Expertise</u>

Petitioner next argues that Mr. Johnson was exceptionally qualified to prosecute this case. Mr. Johnson is certainly a qualified attorney. He is board certified in taxation and has practiced in the area of tax controversy for over 30 years (including 4 years with the Office of Chief Counsel). However, courts generally do not recognize knowledge in tax as a factor leading to enhanced recovery. See <u>Powers v. Commissioner</u>, 43 F.3d at 183-184; <u>Huffman v. Commissioner</u>, 978 F.2d 1139, 1150 (9th Cir. 1992), <u>aff'g in part and rev'g in part</u> T.C. Memo. 1991-144; <u>Cassuto v. Commissioner</u>, 936 F.2d 736, 743 (2d Cir. 1991), <u>aff'g in part and rev'g in part</u> 93 T.C. 256 (1989); <u>Images in Motion of El Paso, Inc. v. Commissioner</u>, T.C. Memo. 2006-19, slip op. at 32-33. Rather, a "special factor" in this context means a nonlegal or technical ability possessed by the attorney. <u>Powers v. Commissioner</u>, 43 F.3d at 183. Because petitioner failed

**[*11]** to establish that Mr. Johnson possesses nonlegal or technical abilities apart from his expertise in tax law, this factor does not support a departure from the statutory rate.

### C.    Difficulty of the Issues

Petitioner's next argument in support of an enhanced recovery is that this was "not a simple case to try".  We disagree.  The law in the TFRP area is well established.  Consequently, this factor does not support a departure from the statutory rate.

### D.    Undesirability of the Case

Petitioner's next argument for enhanced recovery is that she could not afford to litigate this case and that few law firms "would have made similar arrangements to continue to absorb significant attorney's fees and costs with only limited money coming in".  Petitioner cites no authority that this is a factor courts have generally considered.  However, the Supreme Court has held that the "undesirability of the case" is not a special factor warranting a departure from the statutory cap.  Underwood, 487 U.S. at 572-573 (interpreting 28 U.S.C. sec. 2412(d)(2)(A)(ii)).[5]  Because petitioner's argument is clearly rooted in the

---

[5]  "The reasoning employed by the courts under the attorney's fee provision of the Equal Access to Justice Act (EAJA) applies equally to review under section
(continued...)

**[*12]** undesirability of the case, we reject petitioner's assertion that it is a factor supporting enhanced recovery.

E.      Unusually Litigious Position

Finally, petitioner cites Jean v. Nelson, 863 F.2d 759 (11th Cir. 1988), and argues that she is entitled to an enhanced recovery because respondent took an "unusually litigious" position in prosecuting this case.  In Jean, the Court of Appeals for the Eleventh Circuit reviewed a District Court's decision which had enhanced an award of attorney's fees according to numerous factors.  Id.  The Court of Appeals rejected each of the special factors for being inconsistent with the EAJA and the Supreme Court's holding in Underwood.  Id.  The Court of Appeals remanded the case and advised the District Court that it should "be free to approach this question [of "special factors" enhancements] anew, and consider potential special factors that would be consistent with * * * [Underwood] and * * * [the Court of Appeals' opinion], including whether the government's unusually litigious position in this case might constitute a special factor."  Id. at 776.

---

5(...continued)
7430".  Huffman v. Commissioner, 978 F.2d 1139, 1143 (9th Cir. 1992), aff'g in part, rev'g in part T.C. Memo. 1991-144.

**[*13]** Since <u>Jean</u> was decided, several courts (including this Court) have considered the Court of Appeals' question whether a party's taking an unusually litigious position is a factor supporting enhanced recovery. Most of the courts have concluded that an unusually litigious position cannot be considered a special factor because it would amount to "an impermissible award of punitive damages, contrary to the statute and to principles of sovereign immunity." <u>Estate of Cervin v. Commissioner</u>, 200 F.3d 351, 357 (5th Cir. 2000), <u>aff'g</u> T.C. Memo. 1998-176; <u>see also</u> <u>Cassuto v. Commissioner</u>, 936 F.2d 736, 744 (2d Cir. 1991); <u>Dixon v. Commissioner</u>, T.C. Memo. 2006-97, slip op. at 39-40.[6]

We agree with the Court of Appeals for the Fifth Circuit, which reviewed the legislative history of section 7430 and stated that Congress intended the statutory rate to "be sufficient to provide private parties with incentives to 'defend against unreasonable Government action.'" <u>Estate of Cervin v. Commissioner</u>, 200 F.3d at 357 (quoting H.R. Rept. No. 96-1418, 96th Cong., 2d Sess. (1980)). An argument that the Commissioner was unusually litigious does not explain why a departure from the statutory rate is appropriate; it merely explains why there may

---

[6] Those cases, however, generally rely on the fact that there was previously a threshold determination that the Government's position was not substantially justified. The case before us is different because petitioner's qualified offer precludes us from determining (at least during the litigation phase) whether respondent's position was substantially justified.

**[\*14]** be an increase in the number of hours required to litigate the case. Id. We agree with this reasoning and therefore reject petitioner's assertion that an unusually litigious position is a special factor supporting enhanced recovery.

In sum, we find that petitioner has not established any factor leading to an enhanced recovery. Therefore, petitioner is limited to recovering her costs at the statutory rate.

III. Mr. Johnson's Billing Records

Petitioner submitted a spreadsheet itemizing costs incurred from January 9, 2012, through December 1, 2016. As stated supra section I, petitioner is not entitled to recover costs incurred before the submission of the qualified offer (i.e., costs incurred from January 9 through November 6, 2012). Of the remaining costs, respondent takes issue with several line items.

Respondent objects to costs incurred in: (1) researching libel and slander statutes, (2) filing a Form 843, Claim for Refund and Request for Abatement, (3) filing a Form 656-L, Offer in Compromise (Doubt as to Liability), (4) submitting a Freedom of Information Act (FOIA) request, and (5) representing petitioner's husband.

First, the line items that respondent identified related to the libel and slander research, the Form 843, and the Form 656-L all relate to costs incurred before the

[*15] filing of the qualified offer and are therefore not recoverable for the reason stated supra section I.

Second, petitioner failed to address respondent's objection to the FOIA-related costs. Therefore, we find that she concedes that issue and that those items are not subject to reimbursement.

Finally, respondent states (without identifying any specific line items) that "many of the billing statements refer to actions taken on behalf of petitioner's husband, who was not a party to this case or the CDP hearing that preceded it." We have reviewed the spreadsheet and, as best we can determine, respondent is referring to several entries for costs incurred for "clients" in the plural or "client (husband)". However, the subject matter immediately adjacent to these entries clearly indicate that the costs were related to petitioner and not to petitioner's husband. This makes sense because Mr. Johnson's representation of petitioner's husband was limited to the period during the revenue officer's investigation. The revenue officer eventually determined that a TFRP assessment should not be proposed against petitioner's husband. Therefore, petitioner's husband was no longer in need of Mr. Johnson's services by the time the costs at issue were incurred.

**[\*16]** IV.   Conclusion

We award petitioner her claimed costs incurred from November 7, 2012, through December 1, 2016, limited to the statutory caps and subject to removal of the FOIA costs.[7]  Given that respondent does not object to petitioner's estimate of $1,000 for additional costs incurred (at the capped rate) after the filing of her motion, we also award that amount.  Therefore, we find that petitioner is entitled to a total award of $179,049.70.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order will be issued.

---

[7]  We removed 0.3 hours in fees incurred December 8, 2012, and 6.5 hours in fees incurred March 14-15, 2013.  We also removed $50.50 in expense recovery for FOIA-related "photocopies" and "postage".